# Kershaw v. McKown.

## *Damages for Killing Dog.*

(Decided April 6, 1915. 68 South. 559.)

1. *Animals; Killing; Complaint.*—A complaint which alleged that the defendant wrongfully shot and killed plaintiff's dog, of the value of $100.00, stated a good cause of action.

2. *Same; Justification; Proportionate Value.*—Where the action was for the wrongful killing of a dog of the value of $100.00, a special

plea setting up that the dog was worrying the goat of defendant and that it was necessary to kill the dog in order to protect the goat was demurrable for a failure to allege either that the goat was of a value equal to or greater than the value of the dog, or if less, that its value was not greatly disproportionate to that of the dog; it being essential, in view of the provisions of sections 6234 and 7235, Code 1907, and a necessary correlative to sections 2470, 2471, 2832, 6235, and 6236, Code 1907, that the animal to which injury is threatened be of a value proportionate to that of the dog, in order to justify the killing of the dog.

3. *Same.*—Such a plea was also demurrable for failure to show that it was necessary, or appeared to be so to a reasonable man, to kill the dog to keep the goat from being killed or seriously injured.

4. *Same.*—Such a plea was not objectionable because of a failure to allege that plaintiff knew of the vicious propensities of the dog, or for failure to allege that the dog was accustomed to kill goats.

5. *Pleading; Construction.*—Pleas are construed most strongly against the pleader, and, to withstand appropriate demurrer, must negative all adverse inferences or intendments.

APPEAL from DeKalb Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by G. O. Kershaw against J. S. McKown for damages for killing a dog. Judgment for defendant and plaintiff appeals. Reversed and remanded.

DAVIS & BAKER, for appellant. The court was in error in overruling demurrers to defendant's plea.—*Means v. Morgan,* 2 Ala. App. 547; 53 N. C. 35, 65 N. C. 416; 7 Ill. App. 354; 2 Cyc. 416.

ISBELL & SCOTT, for appellee. No brief reached the reporter.

THOMAS, J.—The complaint here is for the wrongful shooting and killing of plaintiff's (appellant's) dog, of the alleged value of $100, and states a good cause of action.—*Parker v. Mise,* 27 Ala. 480, 62 Am. Dec. 776; *White v. Bradley,* 37 Ala. 430; *Lipscomb v. Seaman,* 151 Ala. 333, 44 South. 46.

The defendant, appellee, pleaded the general issue and a special plea, to which plaintiff's demurrer was

overruled, as follows: "For further answer defendant says that at the time he killed the dog it was worrying his goat by biting and otherwise injuring it, and that it was necessary to kill the dog to protect the goat."

It appeared without dispute in the evidence that the market value of the dog was not less than $50. There was no evidence as to the value of the goat. Probably it was an ordinary goat not worth over $1.50 or $2.

The right to kill, without liability therefor, domestic animals of any kind belonging to another, in order to protect human life, cannot be questioned (*Russell v. Barrow,* 7 Port. 106) ; but how far this right to kill extends in the matter of the protection of one's property alone, and not in the protection of his person or life, is a question not settled by the adjudications of this state, and upon which there exists much contrariety of opinion in the authorities elsewhere.

In the case of *Means v. Morgan,* 2 Ala. App. 545, 56 South. 759, this court, having under consideration the question of the liability of a person for killing another's "chicken-eating" hog that, when killed, was in the act of trying to catch the former's chicken in the public road, said, through Pelham, J.: "We do not concur in the opinion of" the lower court "as to the right of killing hogs that are in the habit of eating chickens. The position that such a hog is a public nuisance, and may be killed by any one, is not supported on principle or authority, and, if recognized, would lead to monstrous consequences. Allow such a right, and the peace of society cannot be preserved; for its exercise would stir up the most angry passions, and necessarily result in personal collisions. It may be the killing would be justified by proving that the danger was imminent, making it necessary then and there to kill the hog to save the life of the chicken; but we are inclined to the opinion that even

under these circumstances it is not justifiable to kill the hog. It should be impounded or driven away, and notice given the owner, so that he may put it up."

We may add, however, that if the owner had knowledge of the vicious propensities of the hog as to eating chickens, he would be liable in a personal action for the injuries done in this particular (Code, § 6236; *Kitchens v. Elliott,* 114 Ala. 290, 21 South. 865; *Strouse v. Leipf,* 101 Ala. 453, 14 South. 667, 23 L. R. A. 622, 46 Am. St. Rep. 122; *Durden v. Barnett,* 7 Ala. 169; *Smith v. Causey,* 22 Ala. 571) ; and, where a hog or other stock of a person is trespassing in violation of law upon the premises of another and doing damage, the owner is, as a rule, held equally liable for their trespasses as for his own, irrespective of his knowledge of their propensities (*Gresham v. Taylor,* 51 Ala. 505; *Joiner v. Winston,* 68 Ala. 129; 2 Am. & Eng. Ency. Law [2d Ed.] 365; 2 Cyc. 368).

The right of the injured party to hold the owner liable as pointed out and to distrain stock damage feasant is usually deemed by the law an adequate protection against and redress for depredations done or committed by another's stock; and hence, not only out of a regard for the peace and good order of society, as pointed out in the case of *Means v. Morgan, supra,* but from a sense of abstract right and justice, the law, as a rule, forbids the killing by one of another's hog in order to protect his own chicken because, if it permitted it, the result would be to lay down a doctrine that would allow the destruction of a $50 hog to save a 50-cent chicken, and, consequently, would be measuring the right of a chicken owner by a standard out of all proportion to the wrong done, or suffered to be done, by the hog owner. Certainly, no man would contend that it would be right for the law to countenance the killing of a horse to save the

life of a chicken that was at the time being viciously trampled upon by the horse.—6 Mayf. Dig. 74, 275.

As has been well said in Thompson on the Law of the Farm, p. 168: "The law is made, not for the benefit of one, but for all. It is not its province to furnish an arm for passion, even when most excited by circumstances of aggravation, but to do justice to all, and by its passionless voice declare the rule of abstract right without regard to the personal feeling of the individual who has been injured."

We are aware that dogs have not been regarded in the eyes of the law as occupying the same status as other domestic animals; but the tendency of modern legislation and judicial thought, especially in this state, has been to elevate that status above what it was at common law, and to assimiliate it at least to that occupied by other domestic animals, though not to make it in all respects the same. Even at common law the property right in a dog was recognized; but it was there regarded (and is in our jurisprudence yet so regarded to a modified extent) as a kind of base property, and as not under all circumstances entitled to as much consideration and protection as property in other classes of domestic animals, and this because of the inherent difference between the natural tendencies of dogs and other animals, and in the purposes for which they are severally kept. Other animals, such as horses, cattle, sheep, and hogs, may be thoroughly tamed, and are used for burden, husbandry, and food. But dogs, even in a state of domestication, never wholly lose their wild natures and destructive instincts, and are kept as a rule for the mere whim and pleasure of the owner, which often depends upon retaining and calling into action those very natures and instincts.—Thompson on the Law of the Farm, supra. At common law the property

in a dog was regarded as so base that he was not the subject of larceny.—*Ward v. State,* 48 Ala. 163, 17 Am. Rep. 31; *Johnson v. State,* 100 Ala. 32, 14 South. 629. This rule has been expressly changed by statute in this state (Code, § 7235) ; and it is now also a penal offense, which was not true at common law, to maliciously kill, disable, disfigure, or injure any dog, the property of another, "without good excuse."—Code, § 6234.

At common law the owner of a dog was never liable for the acts of his dog, even when the dog was trespassing (though such owner was liable, as before pointed out, for trespasses of his other stock), unless such owner had knowledge of the vicious propensities of the dog that resulted in the injury complained of (*Durden v. Bennett,* 7 Ala. 169; *Smith v. Causey,* 22 Ala. 571; *Strouse v. Leipf,* 101 Ala. 433, 14 South. 667, 23 L. R. A. 622, 46 Am. St. Rep. 122; *Gresham v. Taylor,* 51 Ala. 505; 2 Am. & Eng. Ency. Law [2d Ed.] 365; 2 Cyc. 368; Code, § 2470) ; but by statute the owner of a dog is now made liable for the trespasses of his dog in killing or injuring live stock of another, irrespective of whether the owner knew or not of the vicious propensity of the dog in this direction, and irrespective of whether it was or not the custom or habit of the dog to kill or injure stock (Code, § 2471) ; and, in the event it is the custom or habit of the dog to worry or kill other live stock, and the owner knows of it, the owner is liable in double damages for the value of all stock killed or injured by such dog (Code, § 2832).

Furthermore, the law makes it a penal offense for any person who owns or has in his possession or under his control any dog or hog known to worry or kill sheep, goats, or domestic fowls to permit such dog or hog to run at large (Code, § 6236), or to permit to run at large any dog that has become rabid, or that has been bitten

by a rabid dog (Code, § 6235). And by express statute the law gives any person the right to kill any dog that is known to worry or kill sheep or other stock, regardless of whether the dog is at the time engaged in such an act or not (Code, § 2832); though prior to this statute, it would seem from expressions of our Supreme Court, there would have been no justification unless at the time of killing the dog he was engaged in killing stock, and unless it was necessary to kill the dog to save the stock.—*Thompson v. State*, 67 Ala. 106, 42 Am. Rep. 101.

The statute evidently is designed to justify the killing, not upon the right of one to defend his property, but upon the ground that a sheep-killing or other stock-killing dog is a common nuisance, and may be destroyed, as might be a rabid dog, on that basis.—*Parker v. Mise*, 27 Ala. 480, 62 Am. Dec. 776.

The plea of justification in this case, as will be observed from reading it as hereinbefore set out, does not proceed upon the theory that the dog here killed was a nuisance—a dog known as being accustomed to kill sheep, goats, or other live stock—and that the defendant had a right to destroy it on that account, but the plea is grounded upon a right to kill the dog in defense of other animate property, and we are of opinion that its averments fall short of stating facts sufficient to justify the killing.

In 2 Cyc. p. 288, the following is laid down as the common-law doctrine in this particular: "Every person has a natural right to defend and protect his animate property—as cattle, stock, and fowls—from injury or destruction by dogs, and in pursuance of that object may kill dogs engaged in doing injury to such animals owned by him; but there must exist an apparent necessity for such a course, and the destruction of the dog must be reasonably necessary under the circumstances."

In *Thompson v. State*, 67 Ala. 106, 42 Am. Rep. 101, our Supreme Court incidentally said on this subject: "The general principle is not denied that a person may lawfully kill an animal when necessary for the preservation of his property, as when one shoots a dog accustomed to injure sheep, and found at the time in the act of killing one."

Here the plea of justification merely alleges, as seen, "that at the time defendant killed the dog it was worrying his goat by biting and otherwise injuring it, and that it was necessary to kill the dog to protect the goat." Pleas are to be construed most strongly against the pleader, and must on demurrer negative all reasonable adverse intendments.—*Scharfenburg v. Decatur*, 155 Ala. 654, 47 South. 95.

The averments here fail to show that it was necessary, or appeared to be so to a reasonable man, to kill the dog in order to save the life of the goat or the goat from serious bodily harm from the dog. For aught to the contrary appearing, the injuries that were being inflicted by the dog on the goat were inconsequential, and the killing of the dog was done to protect the goat from such injuries only, and not to save its life or to save its body from serious harm. This not sufficient as a justification.—Authorities supra.

The third ground of the demurrer pointed out this defect of the plea, and should have been sustained.

Furthermore, we are of opinion that it was necessary to the sufficiency of the plea as a justification that it should also have alleged either that the goat was of value equal to or greater than that of the dog, or, if less, that its value was not greatly disproportionate to that of the dog. If these conditions do not exist, the owner of the goat should refrain from killing the dog, but should drive it away, and seek redress from its owner

by demand or suit for compensation for the damages done by the dog. This rule certainly more nearly comports with abstract right and exact justice as between the respective owners than to permit the killing of a valuable dog to save the life of an ordinary goat of far less pecuniary value, and will surely better promote the peace and good order of society.—*Means v. Morgan, supra.*

It is a necessary corollary to our statutes before adverted to imposing on the owner of a dog (which, as pointed out, the common law did not do) liability for the acts of his dog in injuring or killing stock, irrespective of the owner's knowledge of the vicious propensities of the dog in that direction. Protection of the owner's property in the dog must, in order for the law to be just, be commensurate with and correlative to the liability which the law imposes on the owner for the acts of the dog. In other words, rights and duties must be reciprocal, which doctrine requires that, if the owner is to be held responsible for the act of his $2 dog in killing the $50 goat of another, such owner must be protected against the act of that other who would kill such owner's $50 dog to protect such other's $2 goat. Hence, whatever be the rule as to the matter at common law, we are of opinion that our statutes are such that we must hold that the status of the dog approximates in our law and is kindred to, though not in all respects the same as, the status of other domestic animals, and that he cannot lawfully be killed in defense of another animal that he is attacking where his value largely exceeds that of such animal.—*Nesbitt v. Wilbur,* 177 Mass. 200, 58 N. E. 586; *Anderson v. Smith,* 7 Ill. App. 354.

There is no merit in the insistence that the plea of justification or that the proof should show that plaintiff had knowledge of the vicious propensities of the dog,

nor in the contention that such plea or proof should show that the dog was accustomed to kill goats or sheep.—*Parrott v. Hartsfield*, 20 N. C. 242, 32 Am. Dec. 673; *Russell v. Barrow*, 7 Port. 106.

We have discussed all questions insisted upon in brief.

For the error pointed out, the judgment appealed from is reversed, and the cause remanded.

Reversed and remanded.