[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 259 
 I
The issue before the Court is whether the trial court correctly granted a summary judgment for the defendants in a suit with counts of negligence, wantonness, outrage, fraud and conversion of a check. The trial court granted the defendants' motion for summary judgment on all counts of the amended complaint. We affirm in part, reverse in part, and remand for further proceedings.
The plaintiffs' decedent, Lois Williams, died intestate on May 19, 1982, and was survived by five daughters. Joyce Barrett and Brenda Smith are two of the surviving daughters. At the time of Lois Williams's death, National Home Life Assurance Company (hereinafter insurer) had in effect a policy of life insurance in the amount of $5,000. Lois Williams's husband was the named beneficiary, but he had predeceased her. Plaintiffs timely filed a claim for the insurance proceeds. The insurer issued a check on July 12, 1982, for $5,033.57 payable to "The Estate of Lois Williams, Rt. 5, Box 10, Piedmont, Alabama 36272" and mailed the check to Debra Danford, a sister of the plaintiff, who resided at this address. The endorsements of the five daughters were purportedly made by only two of the daughters. Debra Danford signed the names of three daughters on the check; her own and those of Brenda Smith and Bobby Jo Williams, who was a minor at the time of the signing. The check was endorsed personally by Joyce Barrett and Billie Pogue. No guardianship for this minor child had been established, nor had probate proceedings for the intestate's estate been instituted at the time of these endorsements.
The plaintiffs' evidence tended to show that the check was presented to Farmers Merchants Bank of Piedmont (hereinafter Bank) to be cashed, on July 22, 1982. The teller obtained permission to send the check to the "issuing" bank for clearance. Brenda Smith alleged, in an affidavit, that Latta, a vice president of Bank, telephoned Smith on August 12, 1982, and informed her the check had been cleared for payment, but that before Bank would cash the check, two notes held by Bank, which Lois Williams had signed as guarantor, would have to be paid. This affidavit further stated that the family had relied on this information.
Defendants' evidence,[1] consisting of answers to the plaintiffs' interrogatories, tended to show that:
 "On or about July 22, 1982, one of Lois Williams's daughters brought in a check payable to the estate of Lois Williams. There were several signatures on the back of the check, none of which was in the name of administrator or administratrix of the estate of Lois Williams. The check was processed by the teller to the issuing [drawee] bank for clearance. An explanation was given to [plaintiffs] at that time that the check would be forwarded to see if it would be honored. . . .
 "Teller, Linda Morgan, referred them to [Franklin W. Latta, a vice-president] and [he] sent them to Ruby Gresham, vice-president, and Ms. Gresham sent the check off for collection (clearance) to issuing bank . . . the same day. . . . Plaintiff [sic] asked bank to send check off for collection [clearance]." [Defendant's answers to plaintiff interrogatories.]
The defendants admitted "the check was returned from clearance payable to Farmers Merchants Bank." *Page 260 
Defendants' evidence also showed that the decedent Lois Williams had co-signed as guarantor on two notes made by Joyce Barrett and her husband, Jimmy Barrett, and that Bank had encountered some difficulty in the collection of installment payments on these two notes. No evidence is in the record as to whether any defaults had occurred on the notes nor what would constitute a default under each contract or note. Defendants' only evidence of the notes indicates that they had identical language, which stated:
 "In the event of a default, the lender may (when and where legally permissible), without demand or notice of any kind, set-off all or any portion of this note against any balances, credits, deposits, accounts, monies or other property of the borrower at any time held by the lender." (Emphasis added.)
The evidence tended to show that on August 14, 1982, Joyce Barrett and her husband went to the defendant bank. Upon arrival, the Barretts informed defendant David Martin, a vice-president of the bank, that they had come to collect the proceeds of the policy and to `clear up' the two notes with the bank. Joyce Barrett had borrowed over $1,100 and her husband had borrowed over $2,100 from the bank on April 24, 1981, and February 4, 1982, respectively. Joyce Barrett acknowledged, in her deposition taken on October 8, 1982, that the payments on the loans were at least one month behind. She also, in this deposition, stated that she told the defendant Martin to deduct the remainder owing on the smaller loan from the insurance proceeds and that she and her husband would bring the larger loan's payments up to date. She stated that Martin went to speak with Latta and then came back and told her and her husband they would have to meet with Latta. In her deposition, plaintiff Barrett related the substance of the Barretts' conversation with Latta:
 "Well, we went in and told him about the note, that Mother's name was supposed to come off the note after the small note was paid and that he could take that payment out of the $5,000. He said, `Well, we need the whole thing paid in full, both notes.' Jimmy told him we would get someone else to sign with us on the truck note because this is my money and they can't take the money that's not his and pay his note with it. He thought about that for a minute. My husband said, `Well, what if I get Randy Smith to sign with me?' He thought about that for a minute and then he said, `We're going to need the payment in full.' Then Jimmy said, `Well, you can just have the truck back.' He said, `We don't need the truck. We have the check.' Then Jimmy said, `That's a bunch of stuff.' And then he said, `Well, it might be that.'"
Barrett then informed her sisters of these events, and she said in her deposition they were "very upset because everybody had been calling them and dunning them and threatening to put a lien on our house [Lois Williams's house] because we hadn't paid our bills [Lois Williams's personal debts]."
Joyce Barrett stated in her deposition that the decision to hire a lawyer came as a result of a conversation her sister Brenda Smith had later with Latta. Barrett, in her deposition, said, "he told her that if she didn't believe he could hold the check for the note that she could get a lawyer. So she called a lawyer."
A petition for letters of administration was filed with the probate court on August 17, 1982, and this lawsuit was filed on August 25, 1982. Joyce Barrett and her four sisters were named as plaintiffs, and the insurer, the bank, Martin, and Latta were named as defendants. The bank moved to interplead the insurance proceeds on August 31, 1982. Motions to dismiss made by the defendants were denied. A motion to strike all plaintiffs except Joyce Barrett, as administratrix, was granted on December 7, 1982.[2] Summary judgment *Page 261 
motions for all defendants were filed on December 20, 1982. The trial court granted summary judgment for the insurer and Martin on January 5, 1983. The plaintiffs amended their complaint in toto with counts of conversion, negligence and outrage, and two counts of fraud, and named Latta, Martin, the insurer, and the bank as defendants. The trial court, on motion of the defendants, dismissed Barrett and Smith as individual plaintiffs, dismissed the insurer as a party, and granted summary judgment on all counts for Martin, Latta, and the bank on June 3, 1983. Joyce Barrett, as administratrix, and individually, and Brenda Smith appeal.
 II
Appellants raise three issues on appeal:
 "Was there a genuine issue of any material fact as to the plaintiffs' allegation of conversion relative to the defendants Franklin W. Latta and Farmers 
Merchants Bank of Piedmont?
 "Was there a genuine issue of any material fact as to the plaintiffs' allegation of fraud relative to the defendants Franklin W. Latta and Farmers Merchants Bank of Piedmont?
 "Was there a genuine issue of any material fact as to the plaintiffs' allegation of outrageous conduct
relative to the defendants Franklin W. Latta and Farmers Merchants Bank of Piedmont?" (Emphasis added.)
We first make note that the appellants/plaintiffs do not appeal from the summary judgment as it related to the negligence count, nor as it related to the insurer. As those issues are not raised on appeal, they are considered waived and we will not review them. See Dethlefs v. Etnire, 387 So.2d 201
(Ala. 1980); Mullins v. Mullins, 416 So.2d 1063 (Ala.Civ.App. 1982).
The trial judge entered an order in which he made extensive findings of fact on disputed matters and conclusions of law. This order, in pertinent part, reads:
"1. Lois Williams, a resident of Piedmont, Calhoun County, Alabama, died on May 19, 1982 at Northeast Alabama Regional Medical Center in Anniston, being survived by five daughters, Bobbie Jo Williams, age 17, unmarried; Debra Jean Danford, age 26, married; Brenda Smith, age 24, married; Billie Pogue, of legal age, married; and the plaintiff, Joyce Barrett, of legal age and married. At the time of her death, National Home Life Assurance Company had in force and effect a policy of insurance on the life of Lois Williams in the amount of $5,000.00, being Policy No. 010LA35299.
"* * * *
". . . The check, after endorsements, was presented to the defendant bank to be cashed and an unidentified lady at the bank obtained permission from the plaintiff, Joyce Barrett, to send the check to the issuing bank for clearance. There was no conference by the plaintiffs with any official of the bank at the time the check was sent for clearance.
"3. On or about the 14th day of August, 1982, the check returned from clearance payable to Farmers Merchants Bank, and the bank, through its officer, Franklin W. Latta, called to state that the check had been returned and requested that the administration of the estate of Lois Williams be started and that an administrator or administratrix of the estate of Lois Williams be appointed. Plaintiff Joyce Barrett went to the office of an attorney and was told that it would be necessary to have someone appointed as administrator of the estate of Lois Williams and such appointment was obtained on August 18, 1982 through the Probate Court of Calhoun County, Alabama. After the appointment of Joyce Barrett as administratrix of said estate, no demand was made by her on the defendant bank or the individual defendants for the receipt of the proceeds of said check, either by telephone or by letter. The plaintiff simply employed a lawyer and filed suit for damages. *Page 262 
"4. The defendant bank had requested the appointment of the administrator of the estate of Lois Williams in order that it could properly pay the proceeds of said check to a qualified person to receive same. The check, for the convenience of the plaintiff, was sent to the office of Thomas J. Knight, an Anniston attorney, and the plaintiffs were notified that the check could be picked up at his office. When the check was not picked up by the plaintiff, nor demand for the same received, the defendant bank interpleaded the proceeds of said check into this case following suit and the same now rests in the hands of the Clerk of this Court. The plaintiffs have steadfastly refused to accept said check and instead proceeded with its [sic] demand for damages in the amount of $800,000.00 in compensatory and punitive damages for the tortious conversion of the insurance proceeds and fraud and outrage.
"5. This Court has previously rendered a verdict in favor of the defendant, National Home Life Assurance Company, on its Motion for Summary Judgment.
"6. The evidence fails to show that the defendant, Farmers 
Merchants Bank of Piedmont, Franklin W. Latta or David Martin utilized the proceeds of the insurance check in the amount of $5,033.57 in any manner except to pay the proceeds of the same to the authorized administratrix of the estate of Lois Williams upon qualification. There is no evidence before the Court that any of the defendants deposited said money, collected any of said money for its [sic] purposes nor in any fashion attempted to profit from said transaction by the investment or withholding of said funds. It does appear that the estate of Lois Williams was indebted to the defendant bank at the time of the death, but there is no evidence before the Court that any of the proceeds of said check were applied to this indebtedness.
"* * * *
 FINDINGS OF LAW
"1. The Alabama Supreme Court in the case of American RoadService Co. v. Inmon, 394 So.2d 361 (1980), recognizes the tort of outrage and stated that,
 "`The conduct be [sic] of such serious nature that it can only be characterized as extreme and outrageous. The conduct must be so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.
 "`It has been stressed that this (tort of outrage) does not recognize recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities".' Restatement of Torts, Section 46, (1965) [While in the form of a quotation, this appears to be a paraphrase of Inmon.]
"It is obvious to the Court that the conduct attributable to the defendants in this case could not be classified as outrageous and beyond all bounds of decency and conduct intolerable in a civilized society.
"Likewise, there appears to have been no fraud perpetrated on the plaintiffs by any of the defendants in that the funds were available to the plaintiffs upon the qualification of a proper administrator to receive said funds. Said person, having qualified, was bound to make demand on the defendants for the funds, but no such demand was made.
"2. The question remains whether or not there was a conversion of the proceeds of the life insurance check by the defendant bank or its officers named as individual defendants.
 "`Conversion consists either in appropriation of plaintiff's property to defendant's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of plaintiff's rights, or in withholding possession from plaintiff, under claim of title inconsistent with his own.' Kemp's Wrecker Service v. Grassland Sod Co., Inc., 404 So.2d 348.
 "`The bare possession of property, without some wrongful act in the acquisition of possession, or in its detention, and without illegal assumption of ownership, *Page 263 
or illegal user or misuser, is not a conversion.' Bolling v. Kirby and Brother, 90 Ala. 215
[7 So. 914].
 "`In order for there to be a conversion it must appear that a wrongful taking, detention or an illegal assumption of ownership or use of another's property has taken place.' Ott v. Fox, 362 So.2d 836
(Ala. 1978).
 "`Where the original taker acquires possession of the property rightfully and has neither asserted legal title to it nor exercised dominion over it inconsistent with the rights of the owner, ordinarily a demand and refusal to deliver the property are necessary.' Shriner v. Meyer, 171 Ala. 112, 55 So. 156 (1911); Citizens Bank of Enterprise v. Coffee County Bank, [431 So.2d 1203 (Ala. 1983)].
"After examination of the Findings of Fact and the Law in the case the Court renders the following order:
 "ORDER
"1. There remains only one party plaintiff in this cause, Joyce Barrett as administratrix of the estate of Lois Williams. All other parties plaintiff are hereby dismissed as well as defendant National Home Life Assurance Company.
"2. Defendants' Motion for Summary Judgment with respect to all allegations of the plaintiffs' complaint as last amended in this cause, is granted, as there is no genuine issue as to any material fact and the defendant Farmers Merchants Bank of Piedmont, Franklin W. Latta and David Martin are entitled to judgment on said Motion for Summary Judgment as a matter of law."
 III
The law in summary judgment cases is clear:
 "In order for summary judgment to be proper, the pleadings and affidavits submitted by the movant must show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. A.R.C.P. 56 (c)."
Bon Secour Fisheries, Inc. v. Barrantine, 408 So.2d 490,491-492 (Ala. 1981); see also Allen v. Whitehead, 423 So.2d 835
(Ala. 1982), and Houston v. McClure, 425 So.2d 1114 (Ala. 1983).
The summary judgment rule must be read in the context of the "scintilla evidence" rule. "Thus, if there is a scintilla of evidence supporting the position of the party against whom the motion is made, . . . summary judgment cannot be granted." Ala.R.Civ.P. 56, comment. See also, Bennett v. Cole,426 So.2d 832 (Ala. 1982).
Finally, on a motion for summary judgment, the trial court cannot try issues of fact; it can only decide if there are issues which should go to a jury. Horton v. Northeast Ala.Regional Medical Center, Inc., 334 So.2d 885 (Ala. 1976). Seealso, Ingram v. Akwell Indus., Inc., 406 So.2d 897 (Ala. 1981).
 IV THE OUTRAGE COUNT
The law to be applied in a case involving the tort of outrage has been clearly stated: the behavior of a defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."Restatement (Second) of Torts § 46, Comment (d) (1964). Seealso, American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980), and Bowen v. National Security Fire and Casualty Co.,447 So.2d 133 (Ala. 1983).
Was there a scintilla of evidence that the defendants behaved in a manner toward the plaintiffs which would not be tolerated in a civilized society? We think not. The most that can be said, viewing the evidence most favorably to the appellants, the non-moving parties, is that the defendants' behavior was extended to "mere insults, indignities, threats [or] *Page 264 
annoyances" for which the law will not hold one liable in tort.Restatement (Second) of Torts § 46, Comment (d) (1964).
 THE FRAUD COUNT
In a fraud case, Code 1975, §§ 6-5-101, -102, and -103, give the law to be applied:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Code 1975, § 6-5-101.
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Code 1975, § 6-5-102.
 "Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood." Code 1975, § 6-5-103.
Was there a scintilla of evidence that the defendants committed a fraud upon the plaintiffs? Although this is a more difficult question, we think there was enough evidence to go to the jury to determine whether the bank misrepresented a material fact to the plaintiffs.
The defendants argue that the loans to the Barretts were in default, thereby giving Bank the legal right to withhold the proceeds of the insurance policy, as contracted for by the terms of the notes. The evidence before this Court of defaults on either loan is limited. The only evidence in this regard is Joyce Barrett's deposition in which she admitted the installment loan payments were not up to date at the time the check was first presented to Bank. Bank's answers to plaintiffs' interrogatories showed only that Bank had attempted to collect on the Barrett notes by "normal and usual payment, payment notices and collection procedures."
Although denied by defendants in brief, the plaintiffs'evidence tended to show that the insurance check was endorsed with the purported signatures of Lois Williams's heirs in reliance upon a conversation with Latta. In their brief, the defendants admitted they had certain knowledge at the time the check was presented that:
 "Lois Williams was survived by a minor daughter, Bobbie Jo Williams, age 17, unmarried, and for whom no guardian was appointed. It knew and explained the necessity for the appointment of an administrator of the estate. It knew that three of the endorsements on the check were not made with apparent authority. It knew, through information from the appellant, that there were claims against the estate which had not been paid."
The defendants also admit in brief that the check was nevertheless returned to the "issuing" bank for "clearance" (collection) and that no funds were interpleaded until after suit was filed.
The plaintiffs' evidence also tended to show that because the proceeds were held by Bank, no funds were available to pay creditors of Lois Williams's estate, to pay burial expenses, or to pay for repairs on Lois Williams's house, and that the daughters used what funds they did have to try and pay off the two notes.
We think the plaintiffs offered at least a scintilla of evidence to show the defendants knew an administration of the estate would be necessary before any creditors could collect on any debts of the estate, that Bank did not intend to pay the proceeds to the daughters upon endorsement and "clearance" by the "issuing" bank, that Bank failed to inform plaintiffs of the necessity of an administration and *Page 265 
the planned "use" of the check to collect the debts, and that plaintiffs relied upon defendants' representations as shown by the endorsements and consent to send the check to the "issuing bank" for clearance. We hold it was a fact question to be presented to a jury whether the defendants misrepresented to the plaintiffs a material fact, and whether they relied upon the misrepresentation to their detriment.
 THE CONVERSION COUNT
In an action for conversion of a check, the legislature has spoken:
"(1) An instrument is converted when:
 (a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or
 (b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
(c) It is paid on a forged indorsement.
 "(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
 "(3) Subject to the provisions of this title concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands. "
 "(4) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (sections 7-3-205 and 7-3-206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor. (Acts 1965, No. 549, p. 811.)" Code 1975, § 7-3-419.
See also, Ott v. Fox, 362 So.2d 836 (Ala. 1978).
Was there a scintilla of evidence that Bank, acting through its officers, converted the check? We think so. Defendants admitted in their brief certain knowledge at the time of presentment of the original check. (See discussion under "Fraud Count.")
Knowing these facts, Bank, rather than refusing the check, took the check and had it reissued in Bank's name, and there is some evidence that the defendants notified the plaintiffs that they could not get the proceeds until the indebtedness was paid.
We recognize that the evidence is in conflict on the intent
of the defendants in taking the acts it took, but on summary judgment, we must review the evidence in a light most favorable to the non-moving party. Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784 (Ala. 1980).
Defendants contend that it is undisputed that none of the proceeds of the check were ever applied to the Barrett notes and the record shows this is true, but we do not think this fact entitles the defendants to a judgment as a matter of law.See, Ott v. Fox, supra.
We hold that there was at least a scintilla of evidence whether the defendants wrongfully exercised dominion over the property of the plaintiffs. We realize the defendants contend that the check was sent for clearance with the consent of the plaintiffs, but in view of the facts which the defendants admittedly knew at that time, it was a fact question whether their acts were done for the purpose of wrongfully exercising dominion over the property of the plaintiffs.
 CONCLUSION
Applying the applicable law on the propriety of a summary judgment, we cannot hold that the defendants sustained their burden by showing that there was no genuine issue of material fact, and that the defendants were entitled to a judgment as *Page 266 
a matter of law on the fraud and conversion counts.
For the foregoing reasons, the summary judgment for the defendants Latta, Martin, and Bank on the outrage count is affirmed; the summary judgment in favor of Latta, Martin, and the bank on the counts of fraud and conversion is reversed, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs specially.
[1] The only evidence before this Court of what the defendants allege occurred is contained in Bank's answers to the plaintiffs' interrogatories. The plaintiffs filed, and the trial court granted, a motion to supplement the record with the plaintiffs' deposition and the interrogatories and answers of Bank. See Rule 10, Ala.R.App.P. The defendants make numerous references in their brief to a deposition by Latta, but this deposition was not included in the record on appeal.
[2] Although the trial court granted the motion to strike all plaintiffs other than Joyce Barrett, the case has been presented to us as one involving multiple plaintiffs, both at trial and on appeal.
Hence, we refer throughout this opinion to "plaintiffs."