454 So.2d 515 (1984)
Janice M. WHITE
v.
Mr. Jarrett C. LAW, Mrs. Jarrett C. Law, et al.
82-1265.
Supreme Court of Alabama.
May 18, 1984.
Rehearing Denied July 6, 1984.
*516 William H. Brittain, II of Ball, Ball, Duke & Matthews, Montgomery, for appellant.
William J. Donald and William J. Donald, III of Zeanah, Donald & Hust, Tuscaloosa for appellees.
PER CURIAM.
This case involves the appropriateness of a summary judgment for the defendants in a dog bite case.
On the afternoon of March 5, 1981, plaintiff White went to her daughter's residence to pick up her granddaughter. Upon arrival, White was informed by the granddaughter's babysitter that a neighbor's dog had dug under the backyard fence and was chasing the family's female dog around the backyard. When she opened the gate leading to her daughter's backyard, White was knocked to the ground and bitten at least once on the knee by the intruding dog. As a result of the injury, White required emergency medical treatment and later physical therapy.
On February 16, 1982, White filed a complaint against Mr. and Mrs. Jarrett C. Law, the owners of the dog, and in her original *517 complaint she alleged negligence and/or wanton conduct on the part of the Laws. On December 8, 1982, the Laws filed an answer in which they denied the general allegations of the complaint. On May 3, 1983, the Laws filed a motion for summary judgment. White amended her complaint on May 24, 1983, adding a count for trespass under Code 1975, § 3-1-5, and responded to the summary judgment motion. The defendants relied upon two affidavits and the depositions of White and Mrs. Law to support their claim to summary judgment. The trial court granted the Laws' summary judgment on August 17, 1983, as to all counts of the complaint.
We note initially that the plaintiff does not appeal that part of the summary judgment relating to the trespass count, the wantonness count, or the denial of injunctive relief. Where the appellant does not raise issues on appeal, we will not review them. Barrett v. Farmers & Merchants Bank of Piedmont, 451 So.2d 257 (Ala.1984).
The issue is: Was there a scintilla of evidence that the Laws had knowledge prior to this incident, either express or implied, that this dog had a propensity for such an attack?
Our examination of the record on appeal, in its factual context, reveals the following: White's deposition regarding any knowledge the Laws may have had is set out below (in regard to a telephone conversation between White and Mrs. Law, White summarized the conversation thusly):
"[Mrs. Law] apologized for the dogbite. She just did not know why the dog did that. He had never offered to bite anybody else. But, then, she turned around and said that when my daughter and her husband bought that house, the first thing she did was take that 6 year old [White's granddaughter] to the fence to get her to introduce her to the dog Brutus, to get her to make friends with the dog Brutus in case he ever got out. If they wereif she and the dog were friends, the dog would never attack her. She told me the reason the dog was vicious and like he was was because the previous owners of that house had two small boys that aggravated the dog, that threw rocks at him and something. And they had made him that way, particularly around children. She told me that she thought the neighbors in the neighborhood were glad they had the dog because he protected the neighborhood, that he nobody but nobody came into that neighborhood, into their yard because of that dog."
The statements made in the two affidavits offered by White regarding any knowledge or scienter on the part of the Laws are set out below:
Pat Crawford, a neighbor, in her affidavit, stated:
"My backyard connected to the backyard of Mr. and Mrs. Jarrett C. Law. There is a fence separating our yards.
"On numerous occasions prior to March 1, 1981, I would be in my backyard and the Laws' German Shepard [sic] would charge the fence, growl, bark and act viciously. On some of these occasions, Mr. or Mrs. Law would be in the backyard and view the dog exhibiting such actions."
White's daughter also gave a statement by affidavit:
"My property connects to the property and home of Mr. and Mrs. Jarrett Law.... My backyard and the Laws' backyard is divided by a fence that I had constructed.
"Prior to March 1, 1981, I would be in my backyard or in my driveway when Mr. and Mrs. Law's dog would charge the fence, barking and growling. There was more than one occasion when this was in the presence of Mr. Law. Occasionally Mr. Law would speak to the dog but not always.
"Shortly after moving to this property Mrs. Law and I had a conversation concerning the treatment of the animal by the previous neighbor's children. Mrs. Law advised me that the dog had been teased and harassed by the children and *518 she had been concerned about it. I informed her that my children would not do anything to tease the dog. Sometime after this conversation, I saw Mrs. Law with my youngest daughter at the fence with the dog. After talking with my child, I found that Mrs. Law was trying to get [my child] to make friends with the dog. I instructed my child to stay away from the dog at all times.
"The dog has continued his barking even though he sees my family every day."
The pertinent portion of the deposition of Mrs. Law which was submitted by White reads in full:
"Q. [Y]ou've never seen that dog jump up on that fence and try to get after somebody on the other side of that fence?
"A. With the exception of two little girls visiting that were sticking sticks through the fence at him.
"Q. He tried to jump up on the fence and get at them?
"A. No. He didn't want them sticking a stick in his face. These were not Susie's children.
"Q. I understand that.
"A. He just didn't want the stick in his face.
"Q. I asked you had you ever seen the dog jump up on the fence like he was trying to get at someone and you said no with the exception of, and I asked you then he was trying to do it then and then you said no.
"A. No. He was trying to get the stick.
"Q. He was trying to get the stick?
"A. Because they were poking it in his face.
"Q. Have you ever had any conversation with Mrs. White or Mrs. Culp in reference to the dog not liking children?
"A. Only that those two little girls would poke sticks at him through the fence, but now, Susie's [Mrs. Culp's] children did not do that. They did not abuse him in any way.
"Q. Tell me about that conversation you had and who did you have it with, Mrs. White or Mrs. Culp?"
"A. Susie [Mrs. Culp].
"Q. You had a conversation with Susie, and what was that conversation?
"Q. That two children, either company of theirs or the previous family, the same thing I just got through telling you; that two little girls visiting in the backyard had teased Brutus and that I would like to take Jennifer with me, that was their youngest child who was at that time was about I guess four or five years old. I'm not sure because I don't know how old she is now. And Jennifer would go over there with me and would pet Brutus through the fence. And I was teaching her to be nice to Brutus and that Brutus was not a mean dog.
"Q. Was that the conversation you had with Mrs. Culp?
"A. Uh-huh (positive response). And I did work with Jennifer.
"Q. You worked with Jennifer and brought her over and got her to pet the dog?
"A. Several times. In fact, Jennifer used to meet me twice a week to help me unload my groceries and to pet Brutus."
This is the total evidence before the trial court as to whether the defendants actually knew or should have known of their dog's possible vicious propensities.
This Court recently summarized the law in cases where a dog has attacked someone off its owner's premises.
"[The Court of Appeals] in Kershaw v. McKown, 12 Ala.App. 485, 68 So. 559 (1915), reiterated the common law rule that the owner of a dog is not liable for acts of the dog unless the owner had knowledge of the vicious propensities of the dog that resulted in the injury complained of.... This Court held in Owen v. Hampson, 258 Ala. 228, 62 So.2d 245 (1952), that the common law rule was still applicable in Alabama. The most recent case is Reddett v. Mosley, 45 Ala. App. 38, 222 So.2d 369 (1969), wherein *519 the Court of Civil Appeals stated: `The rule is one of judicial notice and requires proof of the defendant's knowledge (actual or imputed) of the domestic animal's dangerous propensity as a sine qua non in the elements of the claimed negligence.' 45 Ala.App. at 40, 222 So.2d at 370.
"* * *
"* * * Appellant cites Owen v. Hampson, in which this Court, quoting from a previous opinion, stated:
"`Previous knowledge of the animal's vicious habits must be alleged and proved. But positive proof is not always necessary. It may be inferred from the circumstances. But the knowledge of the vicious habits of an animal need not refer to circumstances of exactly the same kind. All that the law requires to make the owner or keeper liable is knowledge of facts from which he can infer that the animal is likely to commit an act of the kind complained of.'

258 Ala. 228, 232, 62 So.2d 245, 248 (1952), quoting Strouse v. Leipf, 101 Ala. 433, 438, 14 So. 667, 668 (1893) (emphasis added). In his treatise, Professor Prosser has also stated that notice of the character of the animal `must extend to the trait or propensity which caused the damage.' W. Prosser, Handbook of the Law of Torts, § 76 (4th ed. 1971)."
Allen v. Whitehead, 423 So.2d 835, 836-838 (Ala.1982). The law in Alabama is clear; a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fountain v. Phillips, 404 So.2d 614 (Ala.1981), Ala.R.Civ.P. 56. All reasonable inferences from the facts are to be viewed most favorably to the non-moving party. Chiniche v. Smith, 374 So.2d 872 (Ala.1979). Finally, the summary judgment rule is to be read in the context of the "scintilla evidence" rule. Ala.R.Civ.P. 56 and comments, Barrett v. Farmers & Merchants Bank of Piedmont, 451 So.2d 257 (Ala.1984). In Allen v. Whitehead, supra, this Court stated:
"Appellant Allen asserts that there is a genuine issue of material fact relating to the alleged vicious propensities of the dog and the knowledge of appellee as to such propensities. Our examination of the record in its factual context reveals the following. In answers to interrogatories propounded by appellee, appellant stated in substance that (1) the dog was large and mean looking and frequently barked at neighbors; (2) the dog was allowed to run wild; and (3) the dog frequently chased cars and barked at them. On the other hand, appellee, by way of affidavit and also in answers to interrogatories propounded by appellant to him, in effect, stated: (1) the dog was friendly and `enjoyed' playing with his children and other children in the neighborhood; (2) appellee had never received any complaints from anyone nor had any reason to believe that the dog represented any kind of threat to anyone; (3) there was nothing aggressive or threatening about the dog's manner or behavior, but on the contrary, his disposition was quiet and gentle, and the dog was affectionate and enjoyed being petted; and (4) that to the best of the knowledge and belief of appellee, the dog had never bitten anyone prior to the instance in question. Appellee admitted that the dog was not confined.
"Considering the evidence submitted to the trial court on appellee's motion for summary judgment most favorably to appellant, the nonmoving party, we cannot find that there existed a genuine issue of material fact. Accordingly, we hold as a matter of law that evidence that a dog was large and mean looking, chased and barked at cars, and frequently barked at neighbors is not sufficient to present an issue of fact as to the dangerous propensities of such an animal."
We must decide whether there was any evidence that the Laws had prior knowledge of facts from which they could infer that their dog was likely to commit an act similar to that committed on White. Affidavits and other evidence offered in *520 response to a summary judgment motion must present facts that would be admissible into evidence, and must be more than a mere statement of allegations contained in the pleadings. Ala.R.Civ.P. 56(e); Morris v. Morris, 366 So.2d 676 (Ala.1979); Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala.1980).
The affidavits and depositions reveal that the Laws' dog had been observed in the Laws' fenced backyard, that the dog would bark, growl, and charge the fence, including occasions in which the Laws were present, and that two young children had "teased" the dog by thrusting a stick through the fence. However, the most important evidence presented is the fact that Mrs. Law was apparently concerned about how the dog would react to Mrs. White's granddaughter. The testimony indicates that Mrs. Law feared that the action of the previous neighbor's children in teasing the dog might cause the dog to harm Mrs. White's granddaughter. She had taken steps to acquaint Mrs. White's granddaughter with the dog.
In Allen we reiterated that the crucial issue is "whether the owner knows, or has reason to know, of the animal's dangerous propensities." 423 So.2d at 838. The testimony in this case presents at least a scintilla of evidence that the Laws knew, or had reason to know, of the dog's dangerous propensities. Here, unlike in Allen, there is evidence that the dog owners were concerned about the animal's past behavior and had taken some steps to avoid problems in the future. The measures the Laws took to acquaint the dog with the new neighbors to avoid problems are commendable, but those actions, together with the other evidence concerning the dog's previous behavior, creates an inference that the owners knew of the dog's dangerous propensities.
We conclude that there was at least a scintilla of evidence that the dog had exhibited dangerous propensities, and that the Laws knew of these propensities.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX, J., dissents, with whom JONES and ALMON, JJ., concur.
MADDOX, Justice (dissenting).
The dog involved in this case was fenced. He dug out under the fence to get into the neighbor's yard. The Court, in Allen v. Whitehead, 423 So.2d 835 (Ala.1982), specifically pointed out in that case "that the dog was not confined." Yet, the Court affirmed the grant of summary judgment there and reverses this case where the dog was confined.
I realize that summary judgment is rarely appropriate in a negligence action; nevertheless, it appears to me that Allen v. Whitehead would mandate the same treatment for the dog owner here that was accorded the dog owner in that case; therefore, I respectfully dissent.
JONES and ALMON, JJ., concur.