The issue presented in this case is whether the trial court erred in directing a verdict for the defendants because of the plaintiff's failure of proof under the Medical Liability Act, Ala. Code 1975, § 6-5-484, which, by the pre-trial order, governed the trial of this case.[1]
The facts of the case are as follows. Babette Loeb, a 73-year-old, sued her medical doctor, Dr. V.P. Cappelluzzo and his professional association, for injuries she sustained after she was left unattended in an examination room in which the furnishings were allegedly unsafe. The pre-trial conference was held three months after the complaint was filed. At the pre-trial conference, the parties outlined their respective theories. Pursuant to an agreement of the parties, the trial court judge entered the pre-trial order that was to control the litigation. It reads in pertinent part as follows:
2. Type of case:
 "This is a suit brought under the Alabama Medical Liability Act, Section 6-5-484, Code of Alabama, 1975.
"3. Position of the Parties:
"A. Plaintiff's contentions:
 "The plaintiff contends that she was invited onto the premises of defendants in order to receive medical treatment. At all times during her visit, the defendants were in complete control of the examination room in which plaintiff was allegedly injured.
 "Plaintiff contends that [she] was seriously injured as a direct result of the fact that Rachel Burdette negligently and/or wantonly breached the applicable standards of care by leaving plaintiff standing alone in an examination room without placing her on the examination table or without providing such care that would make plaintiff comfortable and secure. Plaintiff contends that Dr. Cappelluzzo is responsible for Rachel Burdette's actions based on a theory of respondeat superior.
 "Plaintiff also contends that Dr. Cappelluzzo and/or any of his staff breached the applicable standard of care by failing to provide a safe environment for [plaintiff] while [plaintiff] was waiting to be examined by the doctor. There was no chair in the examination room, only an examination table with a small wooden step-stool and a swivel chair that is commonly used for doctors. Plaintiff did not attempt to get upon the table due to her age and lack of physical ability since there was no one to assist her. She was then forced to sit upon the swivel stool and she attempted to rise from the stool as Dr. Cappelluzzo entered the room and the stool slid out from underneath her resulting in her fall and injury.
"B. Defendants' Contentions:
 "Defendants in this case plead not guilty to the plaintiff's charges of negligence and medical malpractice and allege affirmatively that they exercised the same degree of care, skill and diligence as physicians and nurses in this community exercise in similar cases. The defendants deny that they committed negligence or medical malpractice in connection with the care and treatment of plaintiff, Babette Loeb. Defendants deny that their care and treatment of Babette Loeb caused or contributed to any of the injuries alleged by plaintiff. Defendants contend that there was an efficient intervening cause which prevents defendants from being liable. Defendants contend that they were not the proximate cause of plaintiff's injury. Defendants contend that Plaintiff was guilty of contributory negligence and *Page 1325 
[is] thereby barred from recovering. Defendants contend that Plaintiff assumed the risk and is barred from recovering. Defendants contend that they are entitled to summary judgment."
(Emphasis added.)
During the trial, approximately nine months later after the pre-trial conference, Loeb offered the testimony of two nurses who were presented as expert witnesses. However, she was unable to qualify either nurse as a witness under the Medical Liability Act, which requires that any potential expert witness be a "similarly situated health care provider" before he can give an expert opinion. That statute defines a "similarly situated health care provider" as one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same discipline or school of practice; and
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of standard of care occurred."
Ala. Code 1975, § 6-5-548(b).
Neither witness had actively practiced in a doctor's office setting since 1975; therefore, neither witness could present expert opinions or testimony. Loeb then argued to the trial court that the Medical Liability Act did not apply, that the case only involved the standard of care of an invitee because the case "had nothing to do with the treatment or care that a doctor gives to a patient."
Pursuant to Rule 16, Ala.R.Civ.P., the trial judge restricted Loeb to the use of the theory asserted at the pre-trial conference — that the suit was to be tried under the Medical Liability Act. (See paragraph 2 of the pre-trial order quoted above.) The trial judge then granted the defendants' motion for a directed verdict, because in a medical malpractice case, a plaintiff can proceed only if he or she produces the requisite expert testimony. See Monk v. Vesely, 525 So.2d 1364
(Ala. 1988). Loeb's motions to set aside the judgment and motion for a new trial were denied. Loeb appeals.
The purpose of a pre-trial order is to clarify and simplify the issues to be tried. Arfor-Brynfield, Inc. v. HuntsvilleMall Associates, 479 So.2d 1146 (Ala. 1985). The pre-trial order "shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Rule 16, A.R.Civ.P.
The trial judge has discretion to allow or refuse amendments or modifications of the pre-trial order. Super Valu Stores,Inc. v. Peterson, 506 So.2d 317 (Ala. 1987). In the present case, however, the record is silent regarding any attempt to amend or modify the pre-trial order.
Loeb contends that this case falls within the exception to the general rule requiring expert testimony. She relies onRosemont, Inc. v. Marshall, 481 So.2d 1126 (Ala. 1985), in which the Court recognized certain situations where "the want of skill or lack of care was so apparent" that the average person does not need expert testimony to understand the malpractice, for example, in situations where the doctrine of res ipsa loquitur is applicable. Walker v. Southeast Alabama MedicalCenter, 545 So.2d 769 (Ala. 1989); Therrell v. Fonde,495 So.2d 1046 (Ala. 1986); Lloyd Noland Foundation, Inc. v. Harris,295 Ala. 63, 322 So.2d 709 (1975); Parrish v. Spink, 284 Ala. 263,224 So.2d 621 (1969).
This argument has no merit. The cited cases are inapplicable because the exception mentioned in those cases is reserved for limited situations. See Sellers v. Noah, 209 Ala. 103,95 So. 167 (1923) (a foreign instrument is found in the plaintiff's body following surgery); Meadows v. Patterson, 21 Tenn. App. 283, 109 S.W.2d 417 (1937) (cited with approval in Parrish) (where injuries occur to the body remote from the area of the operation, such as an injury to an eye during an operation for appendicitis). We do not believe any of the exceptions that this Court has recognized is applicable to the present case. *Page 1326 
The parties agreed that the case would be tried under the Medical Liability Act (Ala. Code 1975, § 6-5-484), which, because of the pre-trial order, established the standard of care owed to the patient in this case, and requires that the community standard of due care established by that particular Act be proven by expert medical testimony. The plaintiff's theory of liability, as expressed in the pre-trial order, was that she "was seriously injured as a direct result of the fact that Rachel Burdette negligently and/or wantonly breached the applicable standards of care by leaving plaintiff standing alone in an examination room without providing such care that would make plaintiff comfortable and secure." The plaintiff failed to establish, by expert testimony, the standard of care she claimed was breached by the defendants.
Based on these considerations, we cannot say that the trial court abused its discretion in refusing to allow the nurses to testify as expert witnesses or in subsequently directing a verdict in favor of the defendants.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] The alleged accident happened on September 29, 1987, after the adoption of the Medical Liability Act of 1987, Ala. Code 1975, §6-5-540 et seq., but the pre-trial order specifically stated:
 "This is a suit brought under the Alabama Medical Liability Act, Section 6-5-484, Code of Alabama, 1975."