612 So.2d 1149 (1992)
Ramona L. DOWDY
v.
Linda LEWIS and Florence Clinic, Inc.
1910771.
Supreme Court of Alabama.
November 20, 1992.
Rehearing Denied January 22, 1993.
*1150 Ralph E. Coleman of Coleman & Friday, Birmingham, for appellant Ramona L. Dowdy.
Ralph M. Young of Gonce, Young & Westbrook, Florence, for appellee Linda Lewis.
John S. Key and Nicholas B. Roth of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellees.
HOUSTON, Justice.
Ramona L. Dowdy sued Florence Clinic, Inc.; Dr. Robert Yoder, as the agent, servant, or employee of Florence Clinic; the Public Hospital Board of Lauderdale County and the City of Florence, Alabama, d/b/a Eliza Coffee Memorial Hospital; and Linda Lewis, alleging that they had negligently provided Dowdy with medical care and treatment. Before trial, Dowdy entered into a pro tanto settlement with Eliza Memorial for $80,000, for which she agreed to dismiss her action against Eliza Memorial, but she reserved her right to proceed against Florence Clinic, Dr. Yoder, and Lewis. Thereafter, the jury rendered a verdict for the remaining defendants, Florence Clinic, Dr. Yoder, and Lewis. Dowdy filed a motion for new trial, alleging that the trial court had erred in permitting Lewis to introduce, over objection, two expert witnesses as "similarly situated health care providers" when, Dowdy says, pursuant to Ala.Code 1975, § 6-5-548(b)(3), those witnesses were not competent to testify. The trial court denied the motion. Dowdy appeals.
On appeal, Dowdy raises no issue relating to the defendants Florence Clinic and Dr. Yoder. Consequently, there is nothing for us to review as to these defendants, and the judgment in their favor is hereby affirmed. See White v. Law, 454 So.2d 515 (Ala. 1984), and NAACP v. State, 274 Ala. 544, 150 So.2d 677 (1963), rev'd on other grounds, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964).
Dowdy argues only that "the court erred in permitting testimony of two experts on behalf of defendant, Nurse Lewis, who were not qualified in that they had not practiced within one year prior to the incident as provided in Ala.Code 1975, § 6-5-548(b)(3)."
Dr. Yoder was a partner in Florence Clinic and was treating Dowdy for a thyroid problem. Dowdy had undergone a partial thyroidectomy 20 years previously, and Dr. Yoder recommended surgery to remove the balance of the thyroid. Consequently, Dowdy was hospitalized and Dr. Yoder performed the operation on the morning of March 29, 1992. At approximately 8:00 p.m. that evening, Dr. Yoder visited Dowdy and noted on the medical record that Dowdy was unable to "spit" and might have a small hematoma, but he told her that he could remove the hematoma in his office. According to the nurse's notes, after that visit there were no complaints until midnight on that same evening, when Lewis, who was the medical surgical nurse assigned to Dowdy, noted that Dowdy complained of "choking." As indicated by the nurse's notes, Lewis explained to Dowdy that this "choking" was expected and was a symptom of surgery. The following morning, at approximately 7:30, Dowdy suffered a respiratory arrest caused when the expanding hematoma blocked her airway. A tracheotomy was performed to reopen Dowdy's airway, but she suffered brain damage.
According to Dr. Yoder, Lewis should have called him at midnight when she noted Dowdy's complaint of "choking." According to Gaynele Marie Noel, a practicing registered nurse who testified as Dowdy's expert witness, Lewis should have contacted "Dr. Yoder when [Dowdy] was exhibiting or complaining of choking, which is a red flag that something ... needed to be addressed and the doctor needed to be notified" and Noel said that by failing to advise Dr. Yoder of Dowdy's complaint, Lewis breached the standard of care exercised by nurses in the national community when a patient who has undergone a thyroidectomy and has a hematoma noted by the doctor complains of choking.
According to Lewis and her expert witnesses, Dr. Debra Calvert Davis (a registered nurse with a Ph.D. working in the graduate program at Troy State University *1151 in Montgomery during the years 1985-91) and Dr. Norma Tate Ferguson (a registered nurse with a doctorate in education, who has been teaching since 1971), it was Lewis's duty to assess each complaint of breathing difficulty and "choking," but it was not necessarily her duty to notify the doctor of each complaint. They testified that a nurse's failure to notify the doctor of the complaint would not constitute a breach of the standard of care unless the nurse herself had made an assessment of respiratory difficulty.
Dowdy objected to the testimony of Lewis's two expert witnesses, on the grounds that neither expert had practiced in the same discipline as Lewis during the year preceding the alleged breach of the standard of care. The trial court overruled Dowdy's objection and allowed Lewis's experts to testify and to give their opinions as to the standard of care.
The Alabama Medical Liability Act of 1987, Ala.Code 1975, § 6-5-540 et seq., governs the suit against Lewis, who is a "health care provider" as defined in Ala. Code 1975, § 6-5-481(8) and § 6-5-542(1). Dowdy's cause of action against Lewis is governed by § 6-5-548(a), which provides that in order to hold Lewis liable for the injury Dowdy suffered, Dowdy must prove by substantial evidence that Lewis "failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case." (Emphasis added.)
To qualify to testify as to the standard of care Lewis allegedly breached, Lewis's experts had to meet the definition of a "similarly situated health care provider" under § 6-5-548(b), which is the subsection applicable to the facts in this case. See Medlin v. Crosby, 583 So.2d 1290 (Ala.1991). Pursuant to subsection (b), a "similarly situated health care provider" is one who:
"(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
"(2) Is trained and experienced in the same discipline or school of practice and
"(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard occurred."

(Emphasis added.)
Although § 6-5-548 does not explain what is meant by "practice of nursing," Ala.Code 1975, § 34-21-1(3)(a), defines "practice of professional nursing," in part, as follows:
"The performance, for compensation, of any act in the care and counselling of persons or in the promotion and maintenance of health and prevention of illness and injury based upon the nursing process which includes systematic data gathering, assessment, appropriate nursing judgment and evaluation of human responses to actual or potential health problems through such services as case finding, health teaching, health counselling, and provision of care supportive to or restorative of life and well-being, and executing medical regimens including administering medications and treatments prescribed by a licensed or otherwise legally authorized physician or dentist."
(Emphasis added.) See also, Ala.Code 1975, § 34-21-21.
Lewis maintains that although in the year preceding the date that the alleged breach of the standard of care occurred, her proffered experts had not performed acts related to the care of persons hospitalized, they had devoted their full efforts to the teaching of nursing, which, she contends, establishes their competence to testify because "each nurse witness ... was a highly qualified expert possessing post-graduate degrees in nursing"; that "these witnesses made it their business to determine what was on the `cutting edge' of the profession by continual study of the modern trends in nursing"; and "[if] anything, the two witnesses ... were more highly qualified and current in their perception of the existing standard of care than would be required by § 6-5-548(b)." We agree.
The witnesses permitted to testify in support of Lewis (the health care provider) were Dr. Debra Davis and Dr. Norma Ferguson.
*1152 Dr. Davis was at the time of trial (January 13, 1992), and had been since 1990, the associate dean and director of graduate studies at the University of South Alabama, the seventh largest nursing school in the country. She received her B.S. in nursing from the University of Alabama at Birmingham in 1975. She then worked primarily in the intensive care unit at Cooper Green Hospital in Birmingham, but sometimes worked in other units. Dr. Davis was then affiliated with St. Vincent's Hospital School of Nursing, where she taught medical-surgical nursing, the type of nursing involved in this case, and while she was at St. Vincent's she studied for her master's degree in nursing, obtaining that from the University of Alabama at Birmingham in 1978. After graduation, she taught at the Mississippi University for Women for three years and there supervised floor nursing in medical-surgical, surgical intensive care, and coronary care units. In 1981, she returned to Birmingham to work full time on her doctorate and there supervised students at Brookwood Hospital in medical, surgical, and post-coronary units. In 1984, she received a doctorate in nursing, and then she taught at Troy State University in Montgomery until 1990.
Dr. Ferguson received her B.S. in nursing in 1952, a master's degree in nursing in 1969, and a doctorate in education from Vanderbilt University (Peabody) in 1983. She has taught at the University of North Alabama School of Nursing since 1979. Before that, she taught nursing for eight years at Phil Campbell Community College. During her period as a nurse, she has been an in-service director and has been a floor nurse doing the type of nursingmedical-surgicalthat Lewis was doing on the night in question. As of the date of the trial, Dr. Ferguson had had 40 years' experience as a registered nurse and was still working in the nursing field as a teacher and supervisor of nursing students as they actually perform nursing care on patients.
The trial court did not abuse its discretion in permitting these registered nurses to testify for Lewis.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.

ON APPLICATION FOR REHEARING
HOUSTON, Justice.
APPLICATION FOR REHEARING OVERRULED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs specially.
MADDOX, Justice (concurring specially).
On application for rehearing, Dowdy contends that the opinion in this case conflicts with an opinion I wrote in Loeb v. Cappelluzzo, 583 So.2d 1323 (Ala.1991). Specifically, Dowdy stresses the following sentence from Loeb: "Neither witness had actively practiced in a doctor's office setting since 1975; therefore, neither witness could present expert opinions or testimony." 583 So.2d at 1325.
Dowdy argues that this Court implicitly defined the "same discipline or school of practice" clause in Ala.Code 1975, § 6-5-548(b)(3), in terms of work settings, such as a doctor's office setting, a hospital setting, and an academic setting. Although Loeb can be read implicitly as Dowdy contends, that was not the Court's intent.
In Loeb, this Court concluded that the trial court did not err in refusing to permit two nurses to testify as expert witnesses. Our conclusion was based entirely on the fact that the two had not engaged in the practice of nursing during the year preceding the date of the alleged breach of the standard of care. The "in a doctor's office setting" statement of fact applied to that case, but should not be read as meaning that only those nurses practicing in a doctor's office can testify as experts.

In short, the conclusion in Loeb was based on the fact that the experts there had not engaged in the practice of nursing "during the year preceding the date that the alleged breach of the standard of care occurred." Section 6-5-548(b)(3), Ala.Code *1153 1975. I believe that we correctly construed the "same discipline or school of practice" clause of § 6-5-548(b)(3) on original submission in this case. I do not believe that the holding in this case is inconsistent with the holding in Loeb; therefore, I concur in overruling the application for rehearing.