Charles Tuck, as personal representative of the estate of Virginia Aleene Tuck, appeals from a judgment as a matter of law for Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital("the Hospital"). We affirm.
 Facts and Procedural History
On December 16, 1999, Virginia Tuck was admitted to the Hospital for treatment of respiratory problems and "confusion." Nurses Connie Cowan and Paul Mizelle cared for Virginia Tuck during her stay. Mizelle testified that he was the admitting nurse for Virginia Tuck on December 16. Mizelle determined that Virginia Tuck was at risk for a fall, and he initiated a fall-management protocol. This protocol called for safety measures, such as explaining the call bell to Virginia Tuck, raising the rails on her bed, and placing the bed in its lowest position.
Cowan testified that on December 17, 1999, she cared for Virginia Tuck for the first time. She placed the call bell within Virginia Tuck's reach and told her to call for help if she needed anything. Shortly after this conversation, Cowan found Virginia Tuck out of bed despite the fact that the bed rails were still in the raised position. When Cowan found her, Virginia Tuck was hallucinating and she believed that people were in her room. Cowan said that she tried to reorient Virginia Tuck to reality and told her not to get out of bed. Cowan then turned on the "bed-check alarm," which alerts the nursing staff if a patient gets out of the bed. Around two hours later, Cowan again found Virginia Tuck out of the bed, and she was hallucinating. The bed rails were still raised and the bed-check alarm remained activated. Cowan attempted to reorient Virginia Tuck and to divert her from getting up again. Approximately one and a half hours later, Cowan found Virginia Tuck out of bed. Cowan initiated a restraint protocol.
Cowan, who is trained in the use of patient restraints, testified that she ordered that Virginia Tuck be placed in a belt restraint to prevent her from getting out of bed and possibly injuring herself. A belt restraint is positioned around a patient's midsection and is less restrictive than wrist or ankle restraints. If the belt restraint moves below the hips or above the chest, it should be reapplied to the area around the midsection. Virginia Tuck did not leave her bed for the rest of Cowan's shift.
Virginia Tuck's family testified that throughout their visits on December 16, 17, and 18, Virginia Tuck suffered from hallucinations and she was agitated and fearful. Virginia Tuck's son, Charles, testified that on December 18 he noticed a cloth strap above Virginia Tuck's breast. Charles Tuck testified that he had not discussed the use of restraints on his mother with any of the nursing staff.
Mizelle came back on duty and cared for Virginia Tuck at the end of Cowan's shift on December 18, 1999. Mizelle continued the restraint protocol because Virginia Tuck was cognitively impaired and at risk for injury. Mizelle, like Cowan, had been trained in the selection and use of patient restraints. Mizelle testified that if a patient moved the belt restraint above the breast and below the arms, he would reposition the restraint to the mid-section, but that it would still be effective if located above the breast line. Mizelle testified that a belt restraint would be "inappropriate" if it were located around a patient's neck.
Mizelle testified that he checked Virginia Tuck every two hours, in accordance with hospital policy, and that during those checks he made sure the belt restraint was *Page 501 
in the proper location. Around 5:30 p.m. on December 18, 1999, Mizelle found Virginia Tuck sitting on the floor at the foot of her bed; her leg was folded underneath her. Virginia Tuck told Mizelle that she thought the room was on fire, and she apparently had worked her way out of the restraint and had gotten out of the bed and fallen. Mizelle then added wrist and ankle restraints to Virginia Tuck. The on-call doctor examined Virginia Tuck and determined that she had broken her hip in the fall.
On April 10, 2000, Virginia Tuck sued the Hospital for medical malpractice. Subsequently, Virginia Tuck died from unrelated causes, and her son, Charles Tuck, was substituted as the plaintiff in his capacity as the personal representative of Virginia Tuck's estate. On February 2, 2001, the Hospital filed a motion for a summary judgment. Charles Tuck opposed the motion; his evidence in opposition included an affidavit of his expert witness, Cecilia Cantrell, a former nurse and an administrator at a school of nursing. The Hospital filed a motion to strike the affidavit, and the trial court denied both the Hospital's motion for a summary judgment and its motion to strike Cantrell's affidavit.
On October 29, 2001, a jury trial began. On October 31, 2001, the Hospital filed a motion to exclude the testimony of Charles Tuck's expert witness, Cantrell, on the grounds that she did not qualify as a similarly situated health-care provider as required by § 6-5-548, Ala. Code 1975, a part of the Alabama Medical Liability Act ("AMLA"). The trial court granted the motion. After this ruling, Tuck's attorney sought to call Phillip Buchmann, a Hospital employee who provides training in the use of patient restraints, to testify as an expert on the standard of care in applying restraints. Tuck had deposed Buchmann and had submitted his testimony at the summary-judgment stage and had introduced at trial, before the Hospital filed its motion to exclude Cantrell's testimony, a training video featuring Buchmann. The trial court did not allow Tuck to use Buchmann as an expert because Tuck had not disclosed Buchmann as an expert witness in accordance with Rule 26(b)(4), Ala.R.Civ.P., in response to the Hospital's interrogatories. Tuck moved for a mistrial, and the trial court denied the motion. At the close of Tuck's case, the trial court granted the Hospital's preverdict motion for judgment as a matter of law ("JML") and entered a judgment in favor of the Hospital. Tuck filed a motion for a new trial; the trial court denied the motion, and Tuck appealed.
 Standard of Review
The standard of review applicable to a JML is the same standard the trial court used in initially deciding the motion. If there was substantial evidence, when viewed in the light most favorable to the plaintiff, to warrant a jury determination then a JML is not proper. Cityof Birmingham v. Sutherland, 834 So.2d 755 (Ala. 2002).
In determining whether the trial court properly precluded a designated expert from testifying under § 6-5-548, we apply the abuse-of-discretion standard of review. See, e.g., Husby v. South AlabamaNursing Home, Inc., 712 So.2d 750 (Ala. 1998); Rodgers v. Adams,657 So.2d 838 (Ala. 1995). The abuse-of-discretion standard of review is also applied when evaluating whether the trial court properly precluded an expert from testifying because the expert was not designated in the party's answers to interrogatories as required by Rule 26, Ala.R.Civ.P. See Coca-Cola Bottling Co. United, Inc. v. Stripling, 622 So.2d 882
(Ala. 1993). *Page 502 
 Analysis
Tuck first argues that the trial court's judgment should be reversed because the trial court erred in not granting Tuck's motion for a mistrial. Tuck filed the motion for a mistrial after the trial court had granted the Hospital's motion to disqualify Cantrell as an expert witness and had refused to allow Buchmann to testify as an expert witness. Tuck contends that Cantrell's disqualification was unjust and prejudicial. Tuck points to the trial court's denial of the Hospital's motion for a summary judgment and of its motion to strike Cantrell's affidavit as the basis for what he says was "manifest prejudice" against Tuck created by Cantrell's subsequent disqualification. In response to the Hospital's summary-judgment motion, Tuck submitted Cantrell's affidavit and curriculum vitae. The curriculum vitae showed that Cantrell has a bachelor of science degree in nursing, a master of science degree in medical-surgical nursing, and a doctor of philosophy degree in medical sociology, social psychology theory development, and psychology. The curriculum vitae also stated, among other things, that she was a professor of sociology and nursing at Georgia State University. The Hospital moved to strike Cantrell's affidavit on the grounds that she was not a similarly situated health-care provider under § 6-5-548. Section 6-5-548(b) defines "similarly situated health-care provider" as a person who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same discipline or school of practice.
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred."
The trial court denied the Hospital's motion to strike. When Cantrell testified at trial, she testified that she was not similarly situated to Cowan and Mizelle and that she had not been a staff nurse at a hospital in the year preceding Virginia Tuck's accident in December 1999. The Hospital moved to disqualify Cantrell under § 6-5-548(b), and the trial court granted the motion. Tuck argues that Cantrell should have been deemed qualified to testify as an expert. Tuck points to Rodgers v.Adams, supra, which states:
 "The [AMLA] does not require that the defendant health care provider and the expert witness have identical training, experience, or types of practice, or even the same specialities. To be `similarly situated,' an expert witness must be able to testify about the standard of care alleged to have been breached in the procedure that is involved in the case."
657 So.2d at 842. Tuck also refers to Dowdy v. Lewis, 612 So.2d 1149
(Ala. 1992), in which this Court held that the trial court had not erred in admitting the testimony of two nursing-care experts despite the fact that they had not practiced nursing in the year preceding the claim at issue in that case. 612 So.2d at 1152. This Court stated that the nurses were capable of testifying as to the standard of care, because they were both highly qualified individuals who taught nursing and held advanced degrees. Id. Tuck submits that Cantrell's training, education, and work experience qualify her as an expert and that if Cantrell is not "similarly situated" with Cowan and Mizelle, it is because Cantrell is more qualified than the Hospital's nurses.
Tuck also contends that because the trial court denied the Hospital's motion to strike Cantrell's affidavit, Tuck assumed that Cantrell's testimony would be allowed *Page 503 
into evidence at trial. The trial court's subsequent disqualification of Cantrell caused him, he says, to suffer "manifest prejudice," because the trial court did not give any notice that Cantrell would not be qualified to testify at trial. Tuck asserts that the circumstances of Cantrell's disqualification created a "manifest necessity" for a mistrial as provided in § 12-16-233, Ala. Code 1975, and that the trial court erred in not granting a mistrial and giving him the opportunity to obtain another expert witness to present at re-trial.
We are not persuaded by these arguments that the trial court erred in disqualifying Tuck's expert witness and in not granting a mistrial. For Cantrell to have been qualified as an expert in this case, she needed to be a health-care provider "similarly situated" to Cowan and Mizelle. SeeHusby v. South Alabama Nursing Home, Inc., 712 So.2d at 753 (stating that when the defendant is not an individual but rather is an entity like the Hospital, "the focus should be on the individual practitioner whose specific action is alleged to have fallen below the standard of care."). Cantrell testified that she had not worked as a staff nurse in a hospital since 1978 and that she had last worked as a nurse in 1992. Cantrell's role at Georgia State University School of Nursing was administrative; she has not taught nursing courses in a clinical setting since 1978; and she has never used the type of belt restraint that was used on Virginia Tuck. Cantrell testified that she had never written about patient restraints, that she was not an expert on restraints, and that she did not consider herself similarly situated to Cowan and Mizelle in the year preceding Virginia Tuck's injury. In view of all of the above, it is clear that the trial court properly determined that Cantrell was not a health-care provider similarly situated to Cowan and Mizelle and that she was not qualified to testify as to the standard of care in this case.
Tuck's assertion that Cantrell is qualified to testify despite her failure to meet the requirements of § 6-5-548 is also unpersuasive. This Court has, in two circumstances, deviated from the requirement that an expert in a medical-malpractice case must have practiced in the same discipline as the individual accused of negligence in the year preceding the alleged negligence. They are: (1) where the expert was highly trained and experienced in the area of practice and (2) where the expert's work in the year preceding the alleged negligence demonstrated the expert's competence to testify as to the standard of care. See HealthTrust, Inc.v. Cantrell, 689 So.2d 822, 827 (Ala. 1997) (holding that despite the fact that the expert had not worked as an operating-room technician in the previous year, the expert could testify as to the applicable standard of care because he was "highly qualified" and had worked the previous year as the director of medical services for a major hospital); Dowdy,612 So.2d at 1151-52.
Despite Tuck's claims to the contrary, Cantrell is not "highly qualified" and experienced in the area of physical restraints. Cantrell testified that she had not received training in patient restraints or taught the use of restraints since the 1970's, that the standard of care had changed since she received her training in the use of patient restraints, and that she had never used the belt restraint used on Virginia Tuck. Cantrell did not perform work in 1998 that qualified her to testify as to the standard of care used by nurses in selecting, applying, and maintaining restraints on patients. Cantrell does not come within the exceptions recognized in HealthTrust and Dowdy. *Page 504 
Nor is the fact that the trial court denied the Hospital's motion to strike Cantrell's affidavit a sufficient justification for finding that the trial court erred in disqualifying Cantrell from testifying as an expert. Tuck cites no caselaw to support his claim that Cantrell's disqualification prejudiced him and that he was without notice that she would be disqualified because the motion to strike her affidavit had been denied. The Hospital's arguments in the motion to strike placed Tuck on notice that Cantrell's qualifications were a potential problem if further discovery of her educational and employment background supported the Hospital's motion to strike. Cantrell cannot be allowed to testify as an expert, in view of her lack of qualifications, simply because Tuck made an incorrect assumption as to the sufficiency of her credentials.
Tuck next argues that the trial court abused its discretion and prejudiced his case in not ordering a mistrial after it refused to allow Buchmann to testify as an expert. The trial court refused to allow Buchmann to testify because he was not disclosed in Tuck's answers to the Hospital's interrogatories as an expert as required by Rule 26, Ala.R.Civ.P. Rule 26(b)(4)(A)(i) provides:
 "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."
Tuck argues that Buchmann should have been allowed to testify despite Rule 26 because, he says, at the time he responded to the Hospital's interrogatories, he did not expect to call Buchmann as an expert witness. Tuck attempted to call Buchmann as a witness only after the trial court refused to allow Cantrell, whom Tuck had designated as an expert witness, to testify. Tuck states that had he known that Cantrell would be disqualified, he would have designated Buchmann in his answers to the interrogatories. Tuck also contends that the deposition testimony of Buchmann, as the corporate representative of the Hospital, was material and relevant to the applicable standard of care in positioning and maintaining belt restraints. Tuck asserts that a "manifest necessity" for a mistrial was created when the trial court did not let Buchmann testify as to the standard of care. Tuck also argues that allowing Buchmann to testify would not have been an unfair surprise to the Hospital, because Buchmann had already been deposed by Tuck and was featured in a training video that was presented at trial.
Tuck's arguments are without merit. The trial court did not abuse its discretion in refusing to allow Buchmann to testify as an expert witness and in denying Tuck's motion for a mistrial. This Court has held that it is not an abuse of discretion to disallow an expert's testimony when the expert was not timely identified in answers to interrogatories. See, e.g., Coca-Cola Bottling Co. United, Inc. v. Stripling,622 So.2d at 887-88; CSX Transportation, Inc. v. Battiste, 578 So.2d 1065, 1067-68
(Ala. 1991); Electrolux Motor AB v. Chancellor, 486 So.2d 414, 416-18
(Ala. 1986). Tuck did not designate Buchmann as an expert witness in response to the Hospital's interrogatories, as required by Rule 26. Tuck's assertion that had he known that Cantrell was going to be disqualified he would have designated Buchmann provides no legal basis for finding that the trial court erred or abused its discretion in not allowing Buchmann to testify as an expert, especially where Tuck was on notice that the *Page 505 
credentials of the expert he had designated were being vigorously challenged.
In addition, Tuck has made no showing that Buchmann would have met the requirements of § 6-5-548. Even if Buchmann had met all the requirements, there is no evidence indicating that he would have testified that Cowan and Mizelle had breached the standard of care as to Virginia Tuck. The deposition testimony Tuck points to as addressing the standard of care contains no mention of the standard of care or whether the standard was breached in this case. Tuck's argument that Buchmann's admission as an expert would not have constituted an "unfair surprise" to the Hospital because Buchmann had been deposed is also unpersuasive. As mentioned above, Buchmann's deposition testimony did not give notice as to what his "expert" opinion would have been in this case.
This Court has stated that it will not reverse a trial court's ruling on a motion for a mistrial "unless it is absolutely clear that its discretion has been abused." Wright v. Terry, 646 So.2d 11, 14 (Ala. 1994). The same circumstances that justified the trial court's exercise of discretion in not allowing Buchmann to testify also justify the exercise of the trial court's discretion in denying Tuck's motion for a mistrial.
Tuck's final argument is that the trial court erred in granting the Hospital's motion for a JML. Tuck contends that the Hospital's expert testimony, provided by Cowan and Mizelle, was sufficient to establish the standard of care. Tuck points to Tant v. Women's Clinic, 382 So.2d 1120
(Ala. 1980), where this Court recognized that a plaintiff's burden of proving the standard of care in a medical-malpractice case can be met by expert testimony of the health-care provider or its employees. Id. Tuck asserts that there is substantial evidence, when viewed in the light most favorable to his position, of the standard of care and of a breach of the standard of care and indicating that the breach was the proximate cause of Virginia Tuck's injuries. Consequently, Tuck argues that the evidence should have been presented to the jury and asks us to reverse the JML.
Tuck's argument that the expert testimony of Cowan and Mizelle was sufficient to meet his burden of proof is misplaced. Cowan and Mizelle both testified that the belt restraint was the proper type of restraint to be used on Virginia Tuck, and that they adhered to the required standard of care in all aspects of their treatment of Virginia Tuck. Tuck argues that "neither nurse appeared to be able to articulate exactly what the standard of care is for this situation during [his or her] deposition statement" and that the nurses' "assertions [that they followed the standard of care] should be weighed against the facts they testified about." Tuck cannot claim, on the one hand, that Cowan's and Mizelle's testimony established the standard of care, and, on the other, say that they did not clearly articulate the applicable standard of care. We cannot embrace Tuck's contention that the testimony of the nurses establishes the standard of care when those same witnesses testified that they did not breach the standard of care.
Tuck also argues that even without expert testimony establishing the standard of care, the trial court erred in granting the Hospital's motion for a JML. Tuck points to this Court's decision in Walker v. SoutheastAlabama Medical Center, 545 So.2d 769 (Ala. 1989). In Walker, this Court stated that expert testimony is not required where "the want of skill or lack of care is so apparent as to be understood by a layman, and only common knowledge and experience are required to understand it." *Page 506 545 So.2d at 771. Tuck also refers to Heath v. HealthSouth MedicalCenter, [May 3, 2002] 851 So.2d 24 (Ala.Civ.App. 2002), where the Court of Civil Appeals held that expert testimony was not needed to determine the standard of care required when a nurse failed to respond to a patient's routine call for assistance. The Court of Civil Appeals stated that under the circumstances of the case, a layperson could determine the standard of care by using his or her own "common knowledge" and "experience." 851 So.2d at 24. Tuck contends that it was reasonably foreseeable that his mother, in her confused condition, would continue to attempt to leave her bed and that a layperson could understand the standard of care applicable to the routine hospital care used to keep such patients safe, without expert testimony.
This Court recently granted HealthSouth's request for certiorari review in Heath. We are today releasing an opinion in Ex parte HealthSouthCorporation, [Nov. 27, 2002] 851 So.2d 33 (Ala. 2002), affirming the Court of Civil Appeals' judgment in Heath and reformulating the applicability of the exception. In HealthSouth, we held:
 "A plaintiff need not offer testimony of an expert witness in a medical-malpractice case (a) when the act or omission is in a class of cases '"where want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it,"' [Tuscaloosa Orthopedic Appliance Co. v.] Wyatt, 460 So.2d [156,] 161 [(Ala. 1984)] (quoting Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala. 1983)), such as when a foreign object is left in, the wrong body part is operated on, or a call for assistance is ignored for an unreasonable time; or (b) when a plaintiff either relies on `"`a recognized standard or authoritative medical text or treatise,'"' Anderson[v. Alabama Reference Labs.], 778 So.2d [806,] 811 [(Ala. 2000)], or is himself a qualified medical expert."
851 So.2d at 33. However, the facts of this case are not analogous to those in HealthSouth and do not fit into this exception, even as reformulated.
We also do not agree with Tuck's contention that the standard of care in this case would be comprehensible to a layperson, without expert testimony. This Court has repeatedly held:
 "As a general rule, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiff's burden of proof. See Allred v. Shirley, 598 So.2d 1347, 1350 (Ala. 1992) (citing Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala. 1984))."
Anderson v. Alabama Reference Labs., 778 So.2d 806, 811 (Ala. 2000). The issue here is whether Cowan and Mizelle breached the standard of care in using, applying, and maintaining the belt restraint on Virginia Tuck. The trial court correctly found that Cantrell, an individual with an extensive nursing-education background, was unqualified to testify as to the applicable standard of care. If Cantrell is inexperienced and lacks knowledge of the proper restraint procedures and applications, it is inconceivable that a layperson, with no nursing background, could determine and understand the appropriate standard of care. In addition, the use of restraints on patients in Virginia Tuck's condition is not a practice that is considered part of the routine, custodial care of a patient. Compare HealthSouth, where the issue was a 30-minute to one-hour delay in responding to a call for assistance, activity that can be *Page 507 
classified as a part of routine, custodial care. We hold that expertise was required in implementing the restraint protocol used by Cowan and Mizelle and that expertise was necessary to determine the applicable standard of care.
 Conclusion
We affirm the trial court's JML for the Hospital. Expert testimony was required in this case, and Tuck cannot use the testimony of Cowan and Mizelle to establish the requisite standard of care. The trial court did not abuse its discretion 1) in disqualifying Cantrell as Tuck's expert witness; 2) in not allowing Buchmann to be called as an expert witness; and 3) in denying Tuck's motion for a mistrial.
AFFIRMED.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.