The ESTATE of Thomas Gene BRADLEY, by and through its personal representative, Larry Joe BRADLEY, Plaintiff,

v.

MARINER HEALTH, INC. and Living Centers–East, Inc., d/b/a Montrose Bay Health and Rehabilitation Center, Defendants.

No. CIV.A.99–0892–BH–M.

United States District Court,
S.D. Alabama,
Southern Division.

April 8, 2004.

Anthony Lance Reins, James Burke McHugh, James G. Thornton, Mary J. Perry, Michael J. Fuller, Jr., Wilkes &

McHugh, P.A., Hattiesburg, MS, James R. Freeman, Wilkes & McHugh, PA, Tampa, FL, Kenneth L. Connor, Wilkes & McHugh, P.A., Leesburg, VA, Shawn Tavel Alves, Stone, Granade & Crosby, P.C., Bay Minette, AL, for Plaintiff.

Randal H. Sellers, Joseph Lawrence Reese, Jr., Starnes & Atchison, LLP, Birmingham, AL, William E. Shreve, Jr., M. Warren Butler, William Jordan Gamble, Jr., Lyons, Pipes & Cook, Mobile, AL, John Peter Crook McCall, Starnes & Atchison, Mobile, AL, for Defendants.

## ORDER

HAND, Senior District Judge.

This matter is before the Court on Defendants' motion (Doc. 76) for summary judgment and Defendants' motion (Doc. 86) to strike. After due consideration and in light of oral argument on these motions, it is **ORDERED** that Defendants' motion (Doc. 86) to strike is hereby **GRANTED** and, consequently that Defendants' motion (Doc. 76) for summary judgment is hereby **GRANTED**.

Also before the Court are eight other motions which are either pending or were the subject of an oral ruling by this Court. Accordingly, and for the sake of clarity, Plaintiff's motion (Doc. 92) for sanctions is hereby **DENIED**, Plaintiff's motion (Doc. 94) to allow designation of additional nursing expert is hereby **DENIED**, Defendants' motion (Doc. 98) to quash is hereby **GRANTED**, Defendants' motion (Doc. 99) in limine is hereby **FOUND AS MOOT**, Plaintiff's motion (Doc. 107) for continuance is hereby **DENIED**, Defendants' motions (Doc. 115 & 116) to strike are hereby **FOUND AS MOOT**, and Plaintiff's motion (Doc. 120) to amend the pretrial order is hereby **DENIED**.

## FINDINGS OF FACT

1. Thomas Gene Bradley was a resident of Montrose Bay Health and Rehabilitation Center ("Montrose Bay") from July 28, 1998 until the day of his death, March 18, 1999. (Doc. 76, Exhibit 1). He was 57 years old at the time of his admission to Montrose Bay.

2. Prior to his admission to Montrose Bay, he had been hospitalized at the University of South Alabama Medical Center for several months due to a choking incident that resulted in cardiopulmonary arrest due to lack of oxygen. (Doc. 76, Exhibit 2). The length of time Mr. Bradley's brain was without oxygen is unknown. His diagnoses upon admission to Montrose Bay were: anoxic brain injury (due to the choking incident), secondary myoclonus (uncontrollable muscle contractions), hypertension, hepatitis C, and history of alcohol abuse. He was status post-tracheotomy closure. (Doc. 76, Exhibit 1).

3. At the time of Mr. Bradley's initial admission to Montrose Bay, he was noted to be confused and disoriented to place, time, and situation. *Id.* Mr. Bradley's anoxic encephalopathy (the anoxic brain injury) resulted in substantial functional limitation in self-care, mobility, capacity for independent living, learning, and direction. *Id.* His mini-mental state score was very poor. He had short term memory loss. *Id.* He was evaluated for physical therapy, but determined not to be an appropriate candidate for a rehabilitation program and Dr. Benjamin Schrubbe, his treating physician, entered an order discontinuing a previous order for physical therapy. *Id.*

4. During the time he was a resident at Montrose Bay, Mr. Bradley had multiple instances of falling from either his bed or his Geri-chair. *Id.*

Due to the anoxic brain injury, he suffered from bouts of myoclonus which manifested itself with tremors. Mr. Bradley, per physician order, was placed on Klonopin amongst other medications to control his myoclonus. *Id.* He was followed by a neurologist while at Montrose Bay in reference to same. Mr. Bradley suffered weight loss and also manifested behavioral problems. *Id.*

5. On February 14, 1999, Mr. Bradley aspirated while his brother, Omar Bradley, was feeding him a health shake at Montrose Bay. *Id.* He was subsequently transferred to Thomas Hospital. (Doc. 76, Exhibit 3). While at Thomas Hospital, Mr. Bradley fell on February 15, 1999, and was treated for a laceration. *Id.* On February 16, 1999, a modified barium swallow revealed severe dysphagia with a high risk of aspiration.

6. Although Mr. Bradley was ready for discharge on February 19, 1999, he aspirated again that day at the hospital, and had to be taken to the Intensive Care Unit ("ICU") and placed on a ventilator. *Id.* His family was contacted later that day and told that Mr. Bradley had severe dysphagia and would continue to aspirate and have hypoxic episodes. A percutaneous endoscopic gastrostomy ("PEG") tube was inserted on February 23, 1999. *Id.*

7. Due to his condition, the physician personnel ·at Thomas Hospital advised that Mr. Bradley be categorized as a DNR, which means "do not resuscitate." *Id.* However, his brother Larry Joe Bradley insisted that his Mr. Bradley be categorized as a "Full Code". (*Id.;* Doc. 76, Exhibit 4 at 167). According to the Thomas Hospital discharge summary, on February 24, 1999, Mr. Bradley's prognosis was "poor". (Doc. 76, Exhibit 3).

8. Upon Mr. Bradley's return to Montrose Bay, he was ordered to be placed on fall and aspiration precautions. (Doc. 76, Exhibit 1). In addition, he continued to be followed by a neurologist.

9. On March 10, 1999, Mr. Bradley was found on the floor with a laceration of the eyebrow, for which he was treated in the Emergency Room ("ER") at Thomas Hospital. *Id.*

10. On the day of his death, March 18, 1999, Mr. Bradley was evaluated at Thomas Hospital due to bleeding from his PEG tube site. He returned to Montrose Bay that same day at about 1:50 p.m. with a diagnosis of "bleeding around stoma." *Id.* At 10:45 p.m., Mr. Bradley was found non-responsive, apneic, and without pulse by Frances Bunn LPN. *Id.*

11. On or about August 18, 1999, Larry Joe Bradley, as personal representative of the estate of his brother, Thomas Gene Bradley, filed the instant action in the Circuit Court of Baldwin County, Alabama. The Amended Complaint alleges causes of action for negligence and wrongful death.[1] (Doc. 28, Amended Complaint). On September 27,

---

1. While Defendants argue that Plaintiff's negligence claims in Count One and *negligence per se* claims in Count Two are due to be dismissed on grounds different from Plaintiff's wrongful death claim, the Court evaluates all of Plaintiff's claims under the same framework in this Order as the standard of care analysis applies to Counts One, Two, and Three of Plaintiff's Amended Complaint.

1999, the matter was removed to this Court by Defendants.

## CONCLUSIONS OF LAW

### A. Motion for Summary Judgment

The Court grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2002). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir.1994).

The Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *See Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. "[T]he moving party has the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir. 1989). Where the nonmoving party, as here, bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party presents any material in support of the motion, that material and all factual inferences arising from it must be viewed in the light most favorable to the nonmoving party. *Peppers,* 887 F.2d at 1498. If the Court determines that there is no genuine issue of material fact, it must analyze the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See e.g., Swain v. Hillsborough County School Board.,* 146 F.3d 855, 857 (11th Cir.1998).

Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(emphasis and internal quotation marks omitted), *quoting* Fed. R.Civ.P. 56(e). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The party opposing the motion will avoid summary judgment if there exists a genuine factual conflict in the evidence on a material issue to support a jury question. *See e.g., Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir.1999). The shifting burden from movant to nonmovant at summary judgment described above applies regardless of which party will bear the burden of proof at trial. *See id.* at 607. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,*

475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

The moving party is likewise entitled to judgment as a matter of law when the nonmoving party fails to show sufficiently an essential element of the case as to which the nonmoving party has the burden of proof. *See Peppers,* 887 F.2d at 1497; *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 636 (11th Cir.1991).

## B. Standard of Care

The Alabama Medical Liability Act of 1987 ("AMLA"), *Ala.Code* § 6–5–540, *et seq.* (amended 1987), governs the instant action. The duty owed by a nursing home to a patient is codified in section 6–5–484 of the AMLA:

(a) In performing professional services for a patient, a physician's, surgeon's, or doctor's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and doctors in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in the like case. In the case of a hospital rendering services to a patient, the hospital must use that degree of care, skill, and diligence used by hospitals generally in the community.

(b) Neither a physician, a surgeon, a doctor nor a hospital shall be considered an insurer of the successful issue of treatment of service.

*Ala.Code* § 6–5–484 (amended 1987).

 The determinative issue regarding Defendants' liability is whether they exercised such reasonable care, skill and diligence as other nursing homes would ordinarily exercise under similar circumstances and, if not, whether the alleged breach proximately caused the harm and death at issue. *Keebler v. Winfield Carraway Hospital,* 531 So.2d 841 (Ala.1988). If Defendants provided reasonable care, they have fulfilled any duty owed to Plaintiff, notwithstanding an unfortunate outcome. *McMickens v. Callahan,* 533 So.2d 579 (Ala.1988). Under the AMLA, for Plaintiff to prevail in an action against a nursing home, Plaintiff must establish by substantial evidence: (1) the appropriate standard of care; (2) a deviation therefrom by Defendants' nursing personnel; and (3) proximate cause between the act or omission constituting the breach and the subsequent death. *Peden v. Ashmore,* 554 So.2d 1010 (Ala.1989).

In support of their motion (Doc. 76) for summary judgment, Defendants submit the Affidavit of Donna Sloan, R.N. to show that their care and treatment of Mr. Bradley met the required standard. (Doc. 76, Exhibit 7, Affidavit of Donna Sloan, R.N.) In her affidavit, Nurse Sloan states that she has over twenty years of experience in providing hands-on care as a registered nurse and has served as an Assistant Director of Nursing at a long term care facility such as Montrose Bay. Sloan further submits that she is familiar with and was practicing the degree of care, skill, and diligence ordinarily held and exercised by nurses practicing in long term care facilities such as Montrose Bay from 1997 until 1999. *Id.* Based upon her education, training, and experience, and review of the subject medical records, Nurse Sloan submits that Defendants provided reasonable and appropriate hands-on nursing care and nursing administration services to Mr. Bradley while at Montrose Bay, including nurse supervision, staffing, screening, evaluation, and training, all of which met or exceeded that applicable standard of care held and exercised by similar long term care providers in the national community. *Id.*

In this regard, Nurse Sloan specifically testifies that:

1) the Montrose Bay staff undertook adequate measures to prevent the decedent's falls, including appropriately addressing said falls, appropriately implementing responsive measures, and appropriately evaluating, considering, and revising, when necessary, the care plan in reference to same.

2) the Montrose Bay staff appropriately addressed the decedent's behavioral problems, including rendering medications ordered and prescribed by the decedent's treating physicians.

3) the Montrose Bay staff adequately monitored the decedent's swallowing status and risk for aspiration.

4) the Montrose Bay staff appropriately monitored and addressed the decedent's PEG tube.

5) the Montrose Bay staff appropriately monitored Mr. Bradley's nutritional status.

In sum, and, in response to Plaintiff's specific allegations that alleged improper nursing caused "a) numerous falls; b) aspiration pneumonia; c) peritonitis; [and a] subdural hematoma," Nurse Sloan opines that the care and treatment rendered to the decedent while alive at Montrose Bay was reasonable, appropriate, and met the applicable standard of care. *Id.*

## C. Motion to Strike

The AMLA requires that any expert witness testimony submitted against a nursing home defendant be submitted by a "similarly-situated healthcare provider," as particularly defined within § 6–5–548 of the AMLA. *See Ala. Code* § 6–5–548(b) (1993). Pursuant to § 6–5–548(b) a "similarly situated healthcare provider" is one who:

(1) Is licensed by the appropriate regulatory board or agency of this or some other state.

(2) Is trained and experienced in the same discipline or school of practice.

(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.

*Ala. Code* § 6–5–548(b) (1975).

In the instant action the standard of care allegedly breached by Defendants is "hands-on" nursing care and treatment, whether by a registered nurse, licensed practical nurse, or certified nursing assistant, in a nursing home setting from mid–1998 to mid–1999. (Doc. 28, Amended Complaint). Therefore, to establish a breach of that standard of care, Plaintiff not only has the burden of producing the testimony of someone trained and experienced in the provision of "hands-on" nursing care and treatment in a nursing home, but also someone who has practiced such "hands-on" care during the year preceding mid–1998 up and until mid–1999.

▇▇▇ In response to Defendants' motion (Doc. 76) for summary judgment and supporting documentation, Plaintiff submits the deposition testimony of Natalie Baker, MSN, CRNP, ("Baker") and the affidavit of Myron Jacobs. M.D. ("Jacobs"). (Doc. 83, Exhibits 4–5). After due consideration, the Court finds that neither Baker nor Jacobs is a "similarly-situated healthcare provider" pursuant to § 6–5–548 of the AMLA, and as such they are unable to testify as to the standard of care allegedly breached by Defendants in this matter.

In a factually similar case, the Alabama Supreme Court considered the same issues as are now before this Court. *See Husby v. South Alabama Nursing Home, Inc.*, 712 So.2d 750, 751 (Ala.1998) (where plaintiff sued a nursing home for wrongful death of nursing home patient who had fallen out of bed and fractured her hip). The plaintiff offered a nursing home administrator and an anesthesiologist as standard of care experts. *Id.* at 752.

The defendant nursing home moved for summary judgment arguing that the plaintiff's experts were not "similarly situated health care providers" qualified to testify "as to the standard of care applicable to securing a patient to the bed to prevent a fall." *Id.* The trial court agreed and entered, pursuant to § 6–5–548(b) of the AMLA, summary judgment in the nursing home's favor, reasoning "that neither of the plaintiff's experts was a nurse qualified to give testimony regarding the standard of care of 'hands on' health care providers in a long-term care facility." *Id.*

On appeal, the Alabama Supreme Court upheld the trial court's decision. While acknowledging the requirements of § 6–5–548(b), it held that, because neither of the plaintiff's experts were "trained and experienced in the same discipline or school of practice" as the defendant nursing home's staff, they were not "similarly situated health care providers." *Id.* at 753. The Court observed, "[t]o establish a breach of the standard of care applicable to this case, the plaintiff should have offered the testimony of a nurse trained in the daily care of patients." *Id.* Accordingly, the trial court's decision was affirmed. *Id.* at 754. In the instant matter, as was the case in *Husby,* neither of Plaintiff's standard of care experts were involved in the daily provision of "hands-on" nursing care to nursing home residents between mid–1997 up and until 1999.

Specifically, Mrs. Baker, as Plaintiff's proffered nursing expert, is not, and was not at the time period made basis to this claim, practicing or providing care as a registered nurse, licensed practical nurse, or certified nursing assistant within a nursing home. (Doc. 83, Exhibit 4 at 6–8, 230, 242). Rather, between the latter half of 1997 up and until 1999, Baker practiced in the capacity of nurse practitioner at the Kirklin Clinic in Birmingham, Alabama. (Doc. 86, Exhibit 1, Deposition of Natalie Baker, MSN, CRNP, at 22–39, taken in the matter of *Prevo v. Capital Hill Health Care Center, Inc.,* Circuit Court of Montgomery County, Alabama, Civil Action No. 01–3102–SH). Moreover, and most importantly, Baker testified that, between mid–1997 up and until 1999, she never provided "hands-on" nursing care and treatment in a nursing home, whether as a registered nurse, licensed practical nurse, or certified nursing assistant. *Id.* Consequently, Baker is not qualified to render standard of care testimony in this matter against Defendants according to the tenets of § 6–5–548 of the AMLA.[2]

■ A similar result is reached in reference to the purported standard of care testimony of Myron Jacobs, M.D. Specifically, while Dr. Jacobs is critical of the actions of Defendants' nursing staff, he admits in his deposition of December, 2003 that he is not a nurse, has never practiced as a nurse, has no nursing education, training, or experience, and does not hold himself out as an expert in nursing. (Doc. 86, Exhibit 2, Deposition of Myron Jacobs, M.D., at 8–11, 21–23). Further, Jacobs has never cared for patients in a nursing home, much less made rounds in a nursing home or supervised the provision of care in a nursing home. *Id.* Clearly, as Dr. Jacobs is not licensed, trained, or experienced as a nurse, whether between mid–1997 and 1999 or not, he is not qualified to render standard of care testimony against

---

**2.** While Plaintiff contends that Baker qualifies to testify as an expert under the limited exception to § 6–5–548(b) of the AMLA as announced by the Alabama Supreme Court in *Dowdy v. Lewis,* 612 So.2d 1149 (Ala.1992), the Court finds that Baker is not highly trained and experienced in the area of "hands on" nursing care to patients at nursing home facilities such that she may qualify to testify under the *Dowdy* exception.

Defendants pursuant to § 6–5–548 of the AMLA.

A plain reading of § 6–5–548(b) of the AMLA, coupled with the opinion of the Alabama Supreme Court in *Husby*, mandate that Baker and Jacobs be prevented from offering expert opinions as "similarly situated healthcare providers" as to the standard of care allegedly breached by Defendants in this matter. Indeed, neither Baker nor Jacobs were providing "hands-on" nursing care in nursing homes between mid–1997 up and until 1999. Therefore, it is hereby **ORDERED** that Defendants' motion (Doc. 86) to strike is due to be and is **hereby GRANTED**.

### D. Conclusion

As Plaintiff's proffered standard of care expert testimony has been excluded, Defendants' prima facie showing of compliance with the applicable standard of care remains unchallenged. As a result, it is **ORDERED** that Defendants' motion (Doc. 76) for summary judgment is **hereby GRANTED.**[3] The Clerk is **DIRECTED** to close this case.

---

**3.** While Plaintiff argues that the instant action falls under the exception to the need for expert testimony as announced by the Alabama Supreme Court in *Ex parte HealthSouth Corporation*, 851 So.2d 33 (Ala.2002), the Court finds that the circumstances of the instant action dictate that Plaintiff be required to present expert testimony as to the standard of care allegedly breached by Defendants.